THE PEOPLE ex rel. THOMAS KEARNEY, RESPONDENT, *v.*
JAMES A. BELL, AUDITOR, ETC., APPELLANT.

*Mandamus—Powers of Canal Board—Superintendents of Repairs.*

The Canal Board have power to appoint Superintendents of Repairs upon
that portion of the canals of the State which has been completed, and the
repairs of which have been let by contract.

THIS case arose upon an order to show cause why a mandamus
should not issue out of the Supreme Court to compel the De-
fendant, who was Auditor of the Canal Department, to approve the
official bond of the Relator as Superintendent of Repairs, section No.
1, of the Erie Canal, to which office he had been appointed by the
Canal Board in April, 1868. The bond, prepared in accordance
with the statute, was presented to the Defendant, who refused to ap-
prove it, on the sole ground that the Canal Board had no authority
to make the appointment. The case showed that section No. 1 was
a completed section of the Erie Canal, and that the repairs thereon
were, at the time of the appointment of the Relator, under con-
tract to one Stevens, at $70,000 per annum. After hearing, on
the order to show cause, the Special Term ordered that a peremp-
tory mandamus issue, as above, which order was affirmed at the
General Term, and the Defendant appeals to this Court.

*J. H. Reynolds* for Appellant.

*J. K. Porter* and *S. Hand* for Respondent.

GROVER, J.—The only question in this case is, whether the Canal
Board have power to appoint Superintendents of Repairs upon that
portion of the canals of the State that has been completed, the
repairs of which have been let by contract.

The power to appoint this class of officers was conferred upon
the Board by the Revised Statutes (vol. 1, p. 114, § 6). The duties
of this class of officers are prescribed by statute, same vol., pages
236, 237. Their primary duties were to keep that portion of the
canals committed to their care in repair, and to obey the orders of

the Commissioner in charge in respect thereto. This power of appointment continued in the Board until 1857, and in that year an act was passed (Laws of 1857, vol. 1, p. 214), by the fourteenth section of which this power was taken away from the Canal Board. By the ninth section the power to appoint Superintendents upon the unfinished portion of the canals was conferred upon the Contracting Board, and by the same section it was made the duty of the latter Board to dispense with the services of this class of officers in all cases where the repairs of the canals were placed under contract. This provision remained in force until 1860, when an act was passed (Laws of 1860, p. 152) repealing certain portions of the Act of 1857, among which was section three, and expressly enacting that all laws and parts of laws repealed by the nineteenth section of said act (Act of 1857), which are not inconsistent with the unrepealed provisions of said act, shall be, and 'the same are hereby revived, and shall be in full force after the passage of this act.

There is nothing in the unrepealed portions of the Act of 1857 inconsistent with the power of the Canal Board to appoint Superintendents, unless it is certain provisions authorizing the Contracting Board to let the repairs upon the unfinished portions of the canals by contract. This furnishes no argument against the power of the Canal Board to appoint the officers in question, for the reason that section nine, which dispenses with their services in cases where the repairs were under contract, is expressly repealed. This shows that the Legislature designed to and did authorize the employment of Superintendents upon the canals, when the repairs were placed under contract. It thus appears that the power of appointment of Superintendents was restored to the Canal Board. That such power was derived from the Revised Statutes, which in this respect were revived by the Act of 1860, supra.

The only remaining statute claimed to have any bearing upon the question is an act to amend an act entitled An Act to Enlarge the Powers and Define the Duties of the Contracting Board (being the Act of 1857 above referred to). The only part of this statute having any relation to the question under

consideration is section twelve (Laws of 1867, vol. 2, p. 1544), which provides as follows: " Nothing herein contained, nor in the act hereby amended, shall authorize the appointment of, or continue in office, beyond the first day of June next, any Superintendent of Repairs on the canals of this State."

We have already seen that the power of appointment in question was not at all given by the Act of 1857 (the Act amended by that of 1867), but that, on the contrary, it was given by the Revised Statutes, and taken away from the Canal Board by section nineteen of the Act of 1857. That by the Act of 1860 section nineteen was modified, and the power of appointment, conferred by the Revised Statutes upon the Canal Board, of this class of officers was restored, by reviving the laws repealed by that section. It follows that the above clause in the Act of 1867 does not at all touch the power of appointment by the Canal Board, because its language is expressly confined to that and the Act of 1857, from neither of which statutes is the power derived, but it is derived from other and independent statutes, which are by the very language excluded from the above clause in the Act of 1867.

It is argued, however, that the statute, although not expressly so declaring, shows a clear intention in the Legislature to abolish the office of Superintendent of Repairs. Had this been their intention, why was it not so declared ? Why provide that no authority should be implied, from that and the Act of 1857, for their continuance beyond the first of June, instead of saying that the office should be abolished from and after that date ? Can it be supposed that the Legislature was not aware that the authority of the Canal Board to make the appointment was not at all derived from the Act of 1857, and that the act, then on its passage, in no possible way could confer any such authority ? The more reasonable presumption is, that as by the Act of 1857 this authority was conferred upon the Contracting Board, the clause in the Act of 1857 was inserted to prevent any implication of an intention to revive such authority in the latter Board. It is further argued that there could have been no intention to continue the office, for the reason that it has been rendered unnecessary by the system of contract-

ing for the repairs.   The answer to this is, that whether the office
is or is not necessary, is for the determination of the Legislature,
and not for the Courts ; that the statutes confer the power of
appointment upon the Canal Board, and, by not making its exer-
cise imperative, has vested that body with a discretion to make
the appointment.   That body has duly appointed the Relator, and
the Defendant must act as to the approval of his official bond,
the want of power in the Canal Board to make the appointment
being the only ground upon which the Defendant refused to
approve the bond.

The judgment of the Supreme Court awarding a mandamus to
him to approve the same must be affirmed.

DWIGHT, J.—The only question in this case is as to the authority
of the Canal Board in April, 1868, to appoint Superintendents of
Repairs upon completed sections of the canals, and is merely a
question of statutory construction.

By the Revised Statutes the Canal Board had the power of
appointment and removal of Superintendents in their discretion
(1 R. S. 229, § 69); and sections 99 et seq. of the same title, as
amended by chapter 162, Laws of 1848, provided for the giving
of official bonds by such Superintendents, to be approved by the
Auditor of the Canal Department, and prescribed the duties of the
officers so appointed and qualified.   So the law stood till 1857,
when, by chapter 105 of the Laws of that year, the Legislature
enacted the system of repair contracts, which, with modifications,
has ever since that time been in force.

Section one of that act requires the Contracting Board to let by
contract, to the lowest bidder, all completed Superintendents' sec-
tions of the canal, and authorizes the same Board to let all or any
uncompleted portions of said canal upon which, in their opinion,
the repairs might be made by contract more thoroughly and eco-
nomically than they then were or might thereafter be made by
Superintendents of Repairs; and in its last clause provides that
every contract shall extend over a period of from three to five years,
and shall specify that the repairs therein provided for shall be made

under the immediate direction of the Commissioners in charge. Section two of the same act provided that the contractor for such portion of the canals so let should take, at a valuation to be fixed by the Commissioner in charge, all boats, tools, and implements owned by the State, and belonging to such portion of the canals, in part payment on his contract. Section three provides for the payment of the contractors by monthly drafts of the Commissioner in charge on the Auditor, unless the State, division, or resident engineer shall certify to the Commissioner that the contract is not properly performed, in respect either that the repairs are not promptly and properly made, or that unsuitable materials are used, or that the locks are not well attended, the navigation is not kept free from jams of boats, timber, or other obstructions, or that the feeders are neglected, so that there is not sufficient water for navigation; in which case such monthly draft shall be withheld, and the Contracting Board may declare such contract abandoned, and therefore the repairs on such section may be made by the Commissioner, until such contract shall be relet. Section five empowers the contractor to sue and recover for all trespasses upon the canal or other works under his charge, and recover the same penalties, imposed by law or otherwise, as might be recovered for like offences when prosecuted by a Canal Superintendent. By section nine of the same act it was provided: "The Contracting Board shall have power, and it shall be their duty, to dispense with the office of Superintendent of Repairs in all cases where said repairs are placed under contract," viz., upon all finished portions of the canals; and in all other cases, viz., upon unfinished portions, "when, in their opinion, said repairs can be more thoroughly and economically done by placing the same under the supervision of the resident engineers; and in cases where they may not deem it for the best interests of the State to place said repairs under the supervision of the resident engineers, upon said unfinished portions of the canals, then said Contracting Board may appoint and locate so many Superintendents of Repairs as in their judgment the interests of the State may require." And section nineteen expressly repealed " all laws or

parts of laws which conflict with the provisions of this act, or au-
thorize the appointment of any of the officers or persons whose
appointment is herein provided for, in any other manner than
according to the provisions of this act."

The next legislation, in order of time, which affects the ques-
tion here occurred in 1860, whereby chapter eighty-six of the Laws
of that year, sections six, seven, eight, nine, ten, eleven, twelve, and
fifteen of the Act of 1857, were repealed; and it was further enacted
that " all laws and parts of laws repealed by the nineteenth section
of the said Act of 1857, which are not inconsistent with the unre-
pealed provisions of the said act, shall be, and the same are hereby
revived, and shall be in full force after the passage of this act."
And here ends the history of legislation relating to the appoint-
ment of Superintendents, except that in 1867 the Legislature en-
acted a law which they entitled An Act to Amend the Act of
1857, in which occurs the following language: " Nothing herein
contained, nor in the act hereby amended, shall authorize the ap-
pointment or continuance in office, beyond the first day of June
next, of any Superintendent of Repairs."

We come now, therefore, to the inquiry, whether these various
statutory provisions are susceptible of an intelligent construction;
and if so, what 'was the law applicable to the appointment of
Canal Superintendents at the time when the Canal Board assumed
to make the appointment in question? To my mind the question
presents no difficulty. In the first place, it is undisputed that,
by the Revised Statutes, the power of appointment rested in the
Canal Board, and that by the Act of 1857 it was taken from
the Canal Board, and, so far as it was not wholly abrogated,
was devolved upon the Contracting Board; and we have seen
that, by the last-mentioned act, the office of Superintendent was
dispensed with upon all finished portions of the canals, and its
continuance authorized only upon such unfinished portions as the
Contracting Board might not deem it for the best interests of the
State to place under the supervision of the resident engineers.

But it is claimed, on the part of the Relator, that the Act of
1860, in its turn, repealed the provisions of the Act of 1857, which

operated as above, and revived the provisions of the Revised Statute which created the office of Superintendent, and conferred the power of appointment upon the Canal Board. I do not so construe that. Its effect as a repealing act is confined to certain enumerated sections of the Act of 1857, not embracing either the first, second, third, fifth, or nineteenth sections, and it purports to revive only such provisions of the Revised Statutes "as are not inconsistent with the unrepealed provisions of the said Act of 1857." The question is therefore narrowed down to this : Is the appointment of Superintendents of Repairs by the Canal Board, as authorized by the Revised Statutes upon completed sections of the canals, inconsistent with the provisions of the above-mentioned unrepealed sections of the Act of 1857, or either of them? To my mind it is clearly so. The object of that act, as expressed in the unrepealed sections above enumerated, was clearly to substitute the system of repairs by contract for that of repairs by Superintendents upon completed sections of the canals ; and the whole duty of the Superintendents seems to have been devolved by those provisions upon the contractors.

The duties of the Superintendent, as defined by the provisions of the Revised Statutes above referred to, were " to keep in repair such sections of the canals, and works connected therewith, as should be committed to his charge;" "to make all necessary contracts for that purpose;" "faithfully to expend all such moneys as shall be placed in his hands by the Canal Commissioners or the Commissioners of the Canal Fund;" and "as often as once in sixty days to render his account to the Comptroller, who shall audit the same." This account was of moneys expended by the Superintendent for repairs, under the direction of the Commissioner in charge ; and the latter was required " to certify upon the account that he had examined the same, and that the several disbursements specified therein were made under his direction on the canal, or for repairs necessary to be made thereon, and that he believed such disbursements to have been proper and reasonable, and to have been made as charged." Here was a complete system for the repairs of the canals. It left no room for contractors, except such as

the Superintendent should himself contract with, to do specific items of work, to be paid for by him out of moneys " placed in his hands by the Canal Commissioners, or the Commissioners of the Canal Fund."

Under this system the Superintendent was held responsible for the good condition of his section ; and " under the direction of the Canal Commissioners, and especially of the Commissioners in charge," made such repairs as in his judgment were necessary to be made thereon. Under this system, also, the Superintendent must have had in charge and made use of all " those boats, tools, and implements owned by the State and belonging to each portion of the canal," which, under the contract system, the contractor was required to take at the valuation of the Commissioner. But it is unprofitable to enlarge upon the statement given above of the powers and duties of these officers under the Revised Statutes. That statement is in the language of the statute itself, and manifestly describes an office whose functions are wholly inconsistent with the duties and responsibilities assumed by the contractor under the requirements of the Act of 1857. Under that act, reference being had only to its unrepealed provisions, we have seen that the Contracting Board is required to let by contract all the completed sections of the canals, each contract to cover an entire section, and to embrace the entire work of making all necessary repairs of such portion of the canals, with its structures; of tending the locks; of maintaining a supply of water through the feeders, and of expediting navigation by keeping the canal free from jams of boats, timber, or other obstructions. The contractor was required to take off the hands of the State all its boats, tools, and implements now rendered useless to the latter by the discontinuance of all work on its own account. To the contractor, also, is delegated the authority to protect the canal and its structures from injury by trespassers; his work is to be done under the immediate direction of the Commissioner in charge, and he is paid by draft of the Commissioner upon the Auditor, subject to be stopped only upon the certificate of an engineer that his contract is not well performed.

22

Here, again, is a complete system for the repair and the ordinary care and management of the canals—a system which leaves no room for Superintendents, with any of the functions of the officer so named in the Revised Statutes ; and it may well be asked, if it was intended to continue the office of Superintendent upon sections under contract, what was it intended that its incumbents should do ? The Relator answers, to superintend the operations of the contractors. But this cannot be, for two reasons : first, it is forbidden by the first section of the Act of 1857, which provides that the contractors shall do their work "under the *immediate* direction of the Commissioner in charge ;" and, second, such a function does not belong to the office created by the Revised Statutes. That office, as we have seen, was one of specified powers and duties. The Canal Board was not authorized to appoint Superintendents to possess discretionary powers, nor to perform such duties as the Board should prescribe, but only to appoint to an office whose powers and duties were defined as above. It might well be argued, therefore, that when, by the subsequent act, all those powers and duties were devolved upon other persons, that office was abolished without express provision to that effect. But we are not left here to the argument by inference. The nineteenth section of the Act of 1857 expressly repealed all laws or parts of laws in conflict with the provisions of that act, and all such as authorized the appointment of any officers whose appointment was therein provided for in any other manner than according to the provisions of that act; and this would have been conclusive against the power of the Canal Board contended for by the Relator, but for the effect sought to be given to the Act of 1860, in respect to which, I think, consisted the error of the Supreme Court.

The learned Judge who wrote the opinion at the Special Term says that that act repealed section nineteen of the Act of 1857. If he meant it did so *in terms*, he fell into an error in his reading of the act. It does not purport, in terms, to repeal section nineteen. If he meant that it did so in effect, viz., by reviving the provisions of the Revised Statutes which had been repealed by that section, I think we have seen he gave too large

an effect to the act in question. It did not revive those provisions, except so far as they were not inconsistent with the unrepealed provisions of the Act of 1857. When, therefore, it is seen that section nineteen of the Act of 1857 repealed all the provisions of the Revised Statutes which authorized the appointment of Superintendents by the Canal Board; that section nineteen is not repealed; and that those provisions of the Revised Statutes are not revived by the Act of 1860, for the reason that they are wholly inconsistent with the unrepealed provisions of the Act of 1857, establishing the system of contracts, it is impossible to escape the conclusion, that the power of the Canal Board to appoint to that office does not exist. I do not attempt to give any effect to the provision of the Act of 1867, quoted above; for, though it was the evident intention of the Legislature, by that provision, to put the abolition of the office of Superintendent beyond question, after the date specified, yet I do not think its terms apt to accomplish that purpose, and I think it clear that it was unnecessary, so far as the question here is concerned. It provided that nothing in the Act of 1857 should be construed to authorize the appointment or continuance in office, beyond the first day of June then next, of any Superintendent of Repairs. The Act of 1857 never authorized the appointment of Superintendents except by the Contracting Board, in their discretion, upon uncompleted sections of the canals; and this authority was conferred by section nine, which was repealed by the Act of 1860. The authority here claimed for the Canal Board existed, if at all, under the Revised Statutes. But I think it is demonstrated that that authority was abrogated by the Act of 1857, and was not revived by the Act of 1860. If so, the appointment of the Relator was without authority of law, and the Auditor was right in refusing to approve his bond.

The order appealed from should be reversed.

Judgment affirmed.